## JONES v. ROCHESTER GAS & ELECTRIC CO.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. GAS COMPANIES—OBLIGATION TO FURNISH GAS—APPLICATION.

An application to a gas company which states "that I  *  *  *  do hereby make application to you to have you supply my offices, numbers 706, 708, Granite Building, with gas for lighting said offices,  *  *  * and that I am prepared and hereby offer to comply with any requirements of your company under the statutes of the state," is a sufficient compliance with Laws 1892, c. 566, § 65, which provides that, on the application of the owner or occupant of any premises within 100 feet of any gas main, the gas company shall supply gas as may be required for lighting such premises.

2. SAME—DISTANCE OF PREMISES FROM MAIN.

The 100 feet referred to in such section is from the gas main to the nearest portion of any building, and not to the portion for which gas is desired.

3. CORPORATIONS—AGENTS—SERVICE OF NOTICE ON.

A notice requiring a gas company to furnish gas is sufficiently served on the company by leaving a copy with a person at its office, where it appears that such person was at work around the office and behind the desk, and that previous applications for gas had been attended to by such person, and he testified that he was a clerk in the employ of the company, having charge of job work, surface work, and gas-stove business.

Appeal from Monroe county court.

The action was begun in the municipal court of the city of Rochester, on the 23d day of October, 1894. In that court judgment was rendered for the defendant. The plaintiff appealed to the county court of Monroe county, where a new trial was had before the court and a jury, and a verdict rendered by the jury in favor of the plaintiff for the sum of $575. A motion was made on the minutes for a new trial, "on the ground that the said verdict was contrary to the evidence, and contrary to the law, and on exceptions taken on the said trial." The motion was denied, and all proceedings on the part of the plaintiff were stayed "until the hearing and decision of the defendant's appeal from the order denying its motion for a new trial." December 7, 1895, the defendant appealed from the order of the Monroe county court denying defendant's motion for a new trial. In the plaintiff's complaint it is alleged that he is the occupant of two offices situated in the Granite Building, in the city of Rochester, on Main and St. Paul streets, said offices being Nos. 706 and 708 in said Granite Building, being on the seventh floor thereof, and that he has been the occupant of such offices since the 1st of March, 1894; that said Granite Building is properly plumbed and supplied with gas pipes and fixtures for the lighting of the same by illuminating gas. It also alleges that the defendant is a domestic gas and electric light corporation, organized under the laws of the state of New York, for the purpose of providing illuminating gas and electric light in said city; that it has a gas main along Main street, and along St. Paul street, in said city, "furnishing the building known as the 'Granite Building,' in which the plaintiff's said offices are located, and within one hundred feet of said premises so in part occupied by the plaintiff and situate on said streets, and that the said defendant has an office for the transaction of business in the said city of

· Rochester." The complaint also alleges that on the 15th day of February, 1894, the defendant connected the pipes belonging to it and in said street with the gas pipes in said offices, for the purpose of lighting the same, and the plaintiff continued to use said gas so furnished by the defendant for the purposes aforesaid until the 13th day of June, 1894; "that on the said 13th day of June, 1894, the defendant, without cause or provocation, and without previous notice to the plaintiff, removed the meters so placed in said offices for the purpose of measuring the gas used by the plaintiff in lighting said offices, and turned off the gas therefrom, so that the plaintiff. was, and is, and at all times since the said 13th day of June, 1894, has been, unable to light said offices in said building with the gas so in the mains of said defendant, and notwithstanding plaintiff has demanded of said defendant that said meters be returned to said offices, and that said company furnish gas to the plaintiff for lighting said offices as theretofore supplied, the defendant has refused and neglected to supply said gas, and still refuses and neglects to furnish the same, for lighting said offices as aforesaid, to the great damage of the plaintiff; that at the time of said application, and at the time of the removal of said gas meters by defendant, as herein set forth, the plaintiff was entirely free from all obligations to said defendant, and was owing it no sum of money whatever." The complaint also alleged "that on the 22d day of June, 1894, the plaintiff made and presented to the defendant an application in writing to restore said gas meters to said offices, for the purpose of lighting the same as theretofore supplied, and thereupon, in writing, offered to comply with any requirements of said company under the statutes of the state, and that defendant has refused and neglected, and still refuses and neglects, to restore said meters, or to furnish gas for the said offices as aforesaid, to the great damage of the plaintiff; that at the time of said application, so made as aforesaid, on the 22d day of June, 1894, the plaintiff was owing the defendant no sum whatever, having theretofore paid all money due from him to said corporation." The complaint further alleges that the defendant "has become liable to pay to the plaintiff the sum of ten ($10) dollars forfeit, and the further sum of five ($5) dollars for each and every day, for and during a period of one hundred and thirty two (132) days, to the date· hereof, during which defendant has failed to supply gas to the plaintiff for the purpose of lighting said offices as aforesaid, since the removal of said meters and the discontinuance of the supply of said gas, as hereinbefore set forth." The defendant submitted a general denial in its answer, and also stated, viz.: "The plaintiff is indebted to defendant for gas, which he refuses to pay for."

Upon the close of plaintiff's direct evidence, the defendant asked for a nonsuit: "(1) Upon the ground generally that he has failed to make out any cause of action against the defendant; (2) that the application for gas delivered to McSweeney was not served upon the defendant; (3) that the application served did not comply with the statute, and was ineffectual to put the defendant in default; (4) that, at the time of the service of the notice, the plaintiff was indebted to the defendant; (5) that at the time plaintiff claimed the penalty was incurred, namely, ten days after the service of the notice, the plaintiff was indebted to the defendant, and consequently the application which he had served was not effective, and did not subject the defendant to the penalty provided by the statute; (6) that the meters having been taken out by the plaintiff's consent, in consequence of the disputed bill, the plaintiff did not have the right to demand that the gas be again supplied to him until the dispute was settled; (7) that the plaintiff has failed to show that the premises he occupied in the Granite Building were within one hundred feet of this gas main." The motion was denied, and an exception was taken. At the close of all the evidence in the case, the defendant renewed the motion for a nonsuit, on the same grounds, and on the additional ground "that there is no evidence from which the jury would be warranted in finding that the gas escaped through the negligence or fault of defendant's employés." This motion was denied, and an exception was taken.

Argued before HARDIN, P. J., and FOLLETT, WARD. and GREEN, JJ.

Albert H. Harris, for appellant.

W. Martin Jones, in pro. per.

HARDIN, P. J.   Considerable evidence was given during the trial in respect to the 600 feet of gas for which the defendant claimed the plaintiff should pay, and which the plaintiff claimed he ought not to pay for, because it was alleged it escaped from a gas log by reason of the negligence of the defendant's servants and agents when upon his premises to adjust a range, and connect it suitably with the gas log.   In the course of the charge delivered to the jury, the trial judge observed:

"The question of fact which I submit to your consideration is whether, at the time the plaintiff made application to the company, he paid or had paid all the moneys which he owed it. By the evidence in the case, it may be said, as a matter of law, that he made application in writing to the company. It is unquestioned that they failed to comply with that application. Now, did he, at the time he applied, owe them any money? That brings you to the question regarding the six hundred feet of gas which were either consumed or escaped between April 21st and the succeeding Monday."

Upon the proposition thus submitted the jury have found in favor of the plaintiff.   A careful inspection of the evidence leads us to the conclusion that the evidence supports the finding made by the jury, and that we ought not to disturb such finding, as it is in accordance with the weight of the evidence relating thereto.

2. It is contended by the learned counsel for the appellant that the application did not comply with the statute, and it was therefore ineffectual to put the defendant in default.

In chapter 566 of the Laws of 1892 (volume 2, p. 2153), in its sixty-fifth section, it is provided as follows:

"Upon the application in writing, of the owner or occupant of any building or premises within one hundred feet of any main laid down by any gas-light corporation, or the wires of any electric light corporation, and payment by him of all money due from him to the corporation, the corporation shall supply gas or electric light as may be required for lighting such building or premises; * * * and if for a space of ten days after such application, and the deposit of a reasonable sum as provided in the next section, if required, the corporation shall refuse or neglect to supply gas or electric light as required, such corporation shall forfeit and pay to the applicant the sum of ten dollars, and the further sum of five dollars for every day thereafter during which such refusal or neglect shall continue. * * *"

In giving construction to this section of the law, it is well to remember that penal statutes are to be strictly construed, and that, in an action to recover a penalty, the plaintiff always has the burden of making a plain case within the provisions of the statute. Conly v. Clay, 90 Hun, 20, 35 N. Y. Supp. 521.

On the 22d of June, the plaintiff prepared a written notice or application, addressed to the defendant, in which he stated that:

"I * * * do hereby make application to you to have you supply my offices, numbers 706, 708, Granite Building, with gas for lighting said offices as heretofore supplied, by the return of the meters to the said offices as the same were therein placed on the first of the present month, and that I am prepared, and hereby offer, to comply with any requirements of your company, under the statutes of the state."

In form and substance the notice was a sufficient compliance with the provision of the statute. It sufficiently informed the defendant of the plaintiff's request that his offices should be supplied with gas. It was an application in writing of the occupant of the offices. It seems to have been understood by the defendant as a suitable application, as on the 26th of that month its superintendent addressed a communication to the plaintiff, in which he recognized the essence of the demand, and, in referring to it, offered to comply with it on conditions therein mentioned, as to alleged indebtedness for the 600 feet of gas alleged to have been used by the plaintiff. Under such circumstances, it was proper, upon all the evidence, that the trial judge should hold that the notice was sufficient in form to call upon the defendant to comply with that part of the statute which declares it to be its duty, upon receiving a written application from an owner or occupant, to supply gas. Whatever doubt might have arisen from a critical and technical construction of the language used in the notice seems to have been removed by the construction placed upon it by the defendant's officer; and therefore the trial judge was warranted in holding, as he did, that the application was "such a literal compliance with the statute as to set it running against the defendant."

3. It is now contended in behalf of the defendant that the application was not served upon the defendant. We think there is no force in that contention. The notice was served upon McSweeney, at the gas office, by giving him a copy of it, and leaving it with him. He (McSweeney) was at work around the office and behind the desk. It appeared by the testimony that the plaintiff had been to the defendant's office on several occasions, and made application for gas for various places, and among those places was his office, and that McSweeney was the man that he had dealings with at the office of the company; and it also appeared that the plaintiff, upon calling up the office through the telephone, found, by the response of McSweeney, that he was in charge of the company's business; and it appeared further that the plaintiff had been to the office in April, 1893, and purchased of the company, through McSweeney, a gas range. McSweeney was called as a witness, and testified that he was a clerk in the employ of the defendant, and that he had been such for three or four years; and he testified, viz.:

"In a general way, my duty in connection with that employment is to have charge of job work, surface work, and gas-stove business. My place of business is at 66 Mumford street, the office of the Rochester Gas and Electric Company. * * * I do not receive my instructions from any one source; * * * the cashier, Mr. Jameson, and Mr. Cole. Mr. Cole is the superintendent."

Other and further evidence was given tending to show the relation sustained by McSweeney to the defendant.

We think there is no force in the contention that leaving the notice with McSweeney was not a service upon the defendant. Evers v. Weil (Sup.) 17 N. Y. Supp. 29; Gibson v. Bank, 98 N. Y. 87; Mayor, etc., v. Moore, 52 Hun, 139, 4 N. Y. Supp. 855. It seems

to be assumed in the points of the appellant that "the executive officers of the company had their offices at the place where Mc-Sweeney was employed." An inspection of all the evidence bearing upon the question of McSweeney's relations to the company leaves no doubt in our minds that, when the notice was handed to McSweeney, it was properly served upon the defendant.

4. It is contended by the learned counsel for the appellant that the statute does not apply, because the premises occupied by the plaintiff are not within 100 feet of the defendant's main. It seems to be conceded that the Granite Building is less than 100 feet from the gas main of the defendant. Foster Warner, the architect of the Granite Building, testified:

"The Main street curb is eighteen feet from the Granite Building. The exact distance from the gas main to the Granite Building is twenty-two feet four inches. That the gas company had a main leading into the building two years ago. The building is piped for gas all through. I know where your offices are, on the seventh floor of the Granite Building. From the sidewalk level of the street to the seventh floor of the Granite Building is eighty-three feet and ten inches."

In the course of his cross-examination, he said:

"The distance from the gas main to the seventh floor, where Mr. Jones' office is, would be 113.88 feet, coming in from the gas main, and coming up the building. The only way the gas pipe could be laid would be 113.88 feet. The gas pipe enters the building from the main in St. Paul street."

The trial judge construed the statute to apply to the whole of a building any part of which was within 100 feet of the gas main.

5. It is claimed in behalf of the defendant that, at the time of the service of the notice, the plaintiff was indebted to the defendant. That question seems to have been disposed of by the jury in favor of the plaintiff. Upon looking into the evidence, as we have already intimated, we find that the verdict of the jury is sustained. The jury was instructed explicitly as to the 600 feet of gas which were the subject of dispute between the parties. After the defendant had received the notice and the demand of the plaintiff, it, through the medium of its superintendent, made answer to the plaintiff's application and demand in writing, on June 26, 1894, in the following language:

"Replying to your favors of the 21st, 22d, and 23d inst., by direction of our attorney, we beg to inclose you bill for amount now due this company, and to say that the meters will be set at places mentioned in your favors as soon as within bill is paid. Very truly."

In Brink v. Insurance Co., 80 N. Y. 113, it was said: .

"If they plant themselves upon a specified defense, and so notify the assured, they should not be permitted to retract after the latter has acted upon their position as announced, and incurred expenses in consequence of it."

It was shown that no bills had been rendered by the defendant at that time which remained unpaid, excepting the bills claiming pay for the 600 feet of gas. It seems to have been the habit of the defendant to furnish bills on the 1st of each month, and the evidence discloses that the plaintiff paid all his bills when presented except the bill which the defendant presented for the 600

feet of gas. The plaintiff had received the letter stating the position of the defendant long before he commenced this action. The whole evidence, as well as the finding of the jury, is sufficient to satisfy that part of the statute which provides that the application may be made for a supply of gas by a party when "all money due from him" has been paid.

Some other exceptions have been referred to by the learned counsel for the defendant. They have received attention, and we are of the opinion that they do not present any error requiring an interference with the verdict of the jury. The foregoing conclusions lead to an affirmance of the order denying defendant's motion for a new trial.

Order affirmed, with costs, and judgment on the verdict directed in favor of the plaintiff, with costs. All concur.

1. GAS COMPANIES—REFUSAL TO FURNISH GAS TO TENANT.