POWELL *v.* MISSOURI & ARKANSAS LAND & MINING COMPANY.

Opinion delivered July 3, 1911.

TRUST—FOLLOWING TRUST FUNDS.—Where an attorney collected $1,000 for
    his client, and placed it in a bank to his own credit, and afterwards
    drew out all but $539.82, and subsequently died leaving a balance of
    $988.27 to his credit in the bank, the client is entitled to enforce a
    trust upon such balance to the extent only of $539.82.

Appeal from Sebastian Chancery Court; *J. V. Bourland,*
Chancellor; affirmed with modification.

*Youmans & Youmans,* for appellant.

In order to impress a fund in the hands of an assignee,
receiver or administrator with a trust for the payment of a claim
alleged to be superior to the claims of general creditors, the
identical money must be traced.   4 Cyc. 269, 270; 73 Ark. 324.
Out of the original deposit, the balance transferred to the admin-
istrator could at most include no more than the sum of $539.82,

deceased's balance on July 1. 182 Ill. 351; 59 Kan. 156; 85 Md. 495; 36 L. R. A. 767; 105 N. Y. 256.

*B. R. Davidson,* for appellee.

Equity will follow the fund and declare a lien thereon wherever money has been misappropriated as in this case. 47 Ark. 433-439. And where one mixes a fund with his own, the burden of proof is upon him to show wherein the misappropriated funds have been applied. *Id.* 540-541. The funds may be followed anywhere, and a lien may be declared thereon. 42 Ark. 187; 117 Fed. 920-923; 113 Fed. 202; 127 Fed. 859. On the presumption that the money coming into the hands of the party before his death and wrongfully converted enhanced his estate, the burden of proving that it did not rests upon the administrator. If it did, the appellee is entitled to a lien upon the entire estate. 150 Fed. 258-260; 53 Ark. 545; 51 Ark. 351; 41 Ark. 269; 69 Ark. 43; 24 Col. 502; 65 Am. St. Rep. 238. And he is entitled to this lien in preference to other creditors. 52 Fed. 59; 102 Fed. 780; 8 Atl. 97; 30 Kan. 146, 46 Am. Rep. 90; 80 Ia. 722; 20 Am. St. Rep. 442; 104 U. S. 54, 65, *et seq.;* 137 U. S. 411. The money not belonging to decedent's estate and having been wrongfully appropriated by him, the claim therefor was a preferred claim against the administrator, and should be paid in preference to the general creditors. 49 Neb. 786; 66 Wis. 401; 51 Kan. 87; 83 Mo. 210; 53 N. W. 1037; 30 N. W. 440; 37 Atl. 1038; 40 N. E. 728; 69 Pa. 164; 96 N. Y. 32; 66 Mo. App. 373; 81 Fed. 602; 121 Fed. 599; 94 Fed. 705; 172 Mass. 449; 57 Pa. 202. A trust fund of this kind will be followed, even into the homestead, and a lien declared thereon. 87 Ark. 60. And there is no exemption allowed for claims of this character. Art. 9, sec. 3, Const. Ark.

McCULLOCH, C. J. Appellant's intestate, as attorney for appellee, collected for the latter warrants issued by the Greenwood District of Sebastian County, which were payable to bearer and aggregated the sum of one thousand dollars, and on February 2, 1909, he deposited the same as a credit on his personal account in a bank at Hartford, Arkansas. The bank subsequently collected the amount of the warrants from the county treasurer. Appellant's intestate died on July 14, 1909, without

having paid over to his client, the appellee, any of said sum so collected and without having reported the collection thereof. He made other deposits in the bank from time to time, and drew checks against the account, and at the time of his death there was a balance standing to his credit of $988.27. Appellant was appointed administrator of the estate, and the balance to the credit of the account of his intestate in said bank was passed to his credit, which he received along with the other assets of the estate. Subsequently he paid over to the intestate's widow one-third of this amount as a part of her dower. Appellee instituted this action in the chancery court, alleging that appellant's intestate held the funds so collected by him as its agent and trustee, and that he had wrongfully placed the same to his own credit in the bank instead of paying the same over, and praying that the same be decreed to be the property of appellee and ordered to be paid over to it. The widow was also made a defendant in the action. The court found, on hearing the case, that the allegations of the complaint were sustained by the evidence, and rendered a decree in favor of appellee, directing the appellants, the administrator and widow, to pay over the aforesaid funds to appellee, together with interest thereon from the date of its receipt. The administrator and the widow have both appealed.

The decree is based on the ground that the funds in question swelled the assets of the estate, and that for this reason appellee was entitled to a preference by having the funds paid over before the assets of the estate were distributed. This is, however, contrary to the conclusion reached by this court in *Oswego Milling Co.* v. *Skillern*, 73 Ark. 324. That was a suit in equity to compel the receiver of an insolvent bank to pay over to the plaintiff funds which had been wrongfully received by the bank while insolvent and commingled with its own funds, and the court held that it was not sufficient, in order to give such relief, merely to show that the funds were received and swelled the assets of the bank, but something further must be shown in identification of the funds so as to establish the fact that the identical funds wrongfully commingled went into the hands of the receiver. Judge RIDDICK, in delivering the opinion of the court, quoted an illustration used by Sir George Jessel that, if the trust funds went "into the bag of money" held by the receiver, the court could

compel him to take out an equal amount, and the general creditors would not be injured, but he added: "It is not sufficient that the money in question went to swell the assets and funds of the Howard County Bank. We must know what became of it. The complaint does not allege that this money went into the hands of the receiver, and the facts alleged in the complaint may be true, and still this money may have been paid out by the bank to other creditors before it quit business." We are therefore of the opinion that the chancery court erred in decreeing in favor of appellee for the full amount of the funds which were collected by appellant's intestate, for the reason that it was not shown that this amount was in the latter's hands at the time of his death, or that the same ever passed into the hands of the administrator. The bank account, which was exhibited in evidence, shows that at the time this deposit was made decedent had the sum of $22.55 to his credit on the books of the bank, and that he continued to make deposits of his own funds and draw against the account up to the time of his death. It shows that during the whole period after the deposit of these funds on February 2, the lowest balance to his credit was the sum of $539.82 on July 1, 1909. This sum is, therefore, the most that appellee is entitled to recover, for that is all that can be identified as funds which went into the hands of the administrator, notwithstanding that up to the time of his death the decedent deposited other sums and drew against the account, leaving, as before stated, at the time of his death a balance of $988.27. The fact that the account was swelled before his death could not increase the sum which can be identified as appellee's property, for the reason that the funds subsequently deposited could not increase the amount of appellee's interest in the fund in bank above the amount of the lowest balance to which the commingled funds have been reduced. The question, therefore, remains as to whether this sum of $539.82 can be said to have been identified as the funds of appellee which should be restored before the estate of the decedent is administered. That question is discussed with great learning by Sir George Jessel and his associates in the case of In re *Hallett's Estate,* 13 Chan. Div. 696, which is referred to by Judge RIDDICK in his opinion in *Oswego Milling Co.* v. *Skillern, supra,* and which may be said to be the basis of our decision in that case. The judges in their

opinions discuss the prior English decisions and depart from . them, holding, on facts quite similar to those of the present case, that where an attorney or solicitor collects money and places it to his own credit in a bank, thus mingling it with his own deposits, the trust fund can be traced and ordered restored after his death in preference to claims of general creditors. In one of the opinions the law is aptly stated as follows:

"The simplest case put is the mingling of trust moneys in a bag with money of the trustee's own. Suppose he has a hundred sovereigns in a bag, and he adds to them another hundred sovereigns of his own, so that they are commingled in such a way that they can not be distinguished, and the next day he draws out for his own purposes one hundred pounds, is it tolerable for anybody to allege that what he drew out was the first one hundred pounds, the trust money, and that he misappropriated it, and left his own one hundred pounds in the bag? It is obvious he must have taken away that which he had a right to take away, his own hundred pounds. What difference does it make if, instead of being in a bag, he deposits it with his banker, and then pays in other money of his own, and draws out some money for his own purposes? Could he say that he had actually drawn out anything but his own money? His money was there, and he had a right to draw it out, and why should the natural act of simply drawing out the money be attributed to anything except to his ownership of money which was at his bankers?"

This doctrine is fully sustained by the American cases cited in the brief of appellant, and according to the rule thus announced we are clearly of the opinion that appellee is entitled to recover only the balance of $539.82, which was the minimum balance of the commingled deposits in the bank. This amount could be identified after it had gone into the hands of the receiver, and the decree, after being modified to that extent, will be affirmed. The decree against the widow is reversed, and as to her the cause is dismissed.