[No. 13476. Department One. November 10, 1916.]

CHASE & BAKER COMPANY, *Appellant*, v. E. L. OLMSTED, *Respondent*.[1]

HUSBAND AND WIFE—SEPARATE PROPERTY OF WIFE — GIFTS—EVIDENCE—SUFFICIENCY. A finding that a player piano and music was the separate property of the wife is sustained by testimony of the wife that the same were gifts from her husband, who permitted her to treat it as her own, where there was no evidence to the contrary.

INSURANCE—FOR BENEFIT OF ANOTHER — PROCEEDS—OWNERSHIP—PAYMENT OF PREMIUM. Where a music house carried insurance for its own benefit and upon an instrument and music belonging to another left with it for sale, and the loss was adjusted and paid for the benefit of such owner, the proceeds apportioned to her by the adjustment belong to her, and it is immaterial that she did not know of the insurance or pay any part of the premiums.

TRUSTS — COMMINGLED FUNDS — DISSIPATION BY WITHDRAWALS — RIGHTS OF BENEFICIARY. Where a trustee blended the trust funds by depositing it in bank with his own, and checked against it indiscriminately, withdrawals leaving a balance of less than the trust funds are a dissipation of the fund, except as to the balance, and

[1]Reported in 160 Pac. 952.

the *cestui que trust*, garnisheeing the bank, is limited to the recovery of the lowest balance to which the blended account was reduced at any time.

Same—Commingled Funds—Dissipation—Rights of Beneficiary—Garnishment—Burden of Proof. A *cestui que trust*, garnisheeing a bank on the blended account of the trustee which the trustee had reduced by withdrawals, has the burden to show the amount of the lowest balance of the blended account which fixes the amount of the recovery.

Appeal — Review — Invited Error. In a garnishment of trust funds blended by the trustee by general deposit in a bank, objection to the bank's books, when offered to show the actual balance due, does not invite the error of the court in holding that the balance prior to the last deposit was immaterial and that the final balance, whatever its source, was charged with the trust to the full amount of the trust fund.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered September 14, 1915, upon findings in favor of the intervener, adjudging the right to money impounded in garnishment proceedings, tried to the court. Reversed.

*Tolman & King*, for appellant.

*Hamblen & Gilbert*, for respondent.

Ellis, J.—This case presents a contest between plaintiff and intervener as to the right to certain moneys in bank impounded by writ of garnishment.

Plaintiff, Chase & Baker Company, brought an action against the Empire Music House to collect a debt of approximately $600, summoning the Old National Bank as garnishee. The writ was served July 6, 1915. The bank answered, admitting a debt to the music house in the sum of $551.07 at that time. Thereafter Mrs. E. L. Olmsted intervened, claiming $525 of this money as the proceeds of insurance which had been carried upon a certain piano player and music which she had left with the music house for sale or exchange and which had been destroyed by fire. The evidence showed that, in the summer of 1914, intervener deliv-

ered to the music house for sale or exchange a player and music, which she testified were gifts from her husband. In the spring of 1915, a fire destroyed this player and music, together with other musical instruments and property which belonged to defendant. The defendant, music house, carried three policies of insurance in different companies covering its own and intervener's property. The insurance adjusters fixed the loss on the player at $500 and on the music at $25. The total loss upon all the property, exclusive of fixtures, was adjusted at $2,296.28, which amount was apportioned ratably between the three insurance companies. Pursuant to this adjustment, the Fidelity Phoenix Insurance Company of New York paid $765.46 on June 18, 1915; the London Assurance Company of London paid $1,020.61 on June 21; and the St. Paul Fire & Marine Insurance Company paid $510.21 on July 1. These sums were deposited by the music house in its own checking account in the Old National Bank on the dates of their respective payment. Of these payments, $175 of the first, $233.63 of the second, and $116.37 of the third were paid on account of intervener's player and music. The manager of the music house testified that he informed the insurance adjuster of intervener's ownership of the player and music and that the adjustment was made according to its proportion of the entire insurance. In this he was corroborated by the adjuster. On cross-examination, the manager testified that the music house checked against these deposits indiscriminately and that its check book showed that, on June 30, 1915, some days after the deposits of all the money save the last payment, the account of the music house had been checked down to 44 cents, but that he had no means of telling what checks had been presented for payment or how much money was actually in the bank standing to the credit of that account on June 30. Intervener then asked permission to show from the individual ledger of the bank the actual balance that then stood to the credit of the music house. Plaintiff's counsel at first assented to this, but after-

wards objected on the ground that it was immaterial what was in the bank if checks had been issued against the account and were subsequently paid.  The court sustained the latter view, stating that in this proceeding it was immaterial what checks were paid.  Intervener thereupon rested and plaintiff offered no testimony.

The court, evidently entertaining the view that the state of the account at any time throughout its currency was immaterial and that the balance remaining at the time of service of the writ of garnishment should be charged with the whole amount of the insurance paid on account of intervener's instrument and music, made no findings as to the dates when the several payments were deposited and no findings as to the state of the account at any time during its currency.  The court merely found that, of the sums paid and deposited on account of the insurance, $525 had been paid on account of the loss sustained by the intervener, and that, at the time of the service of the writ, there remained in the bank $551.07 to the credit of the music house which had been paid by the bank into the registry of the court, concluding, as a matter of law, that of this sum $525 were held by defendant in trust for the intervener.  The court adjudged that, of this money deposited with the clerk of the court, intervener was the owner of $525, and ordered that the clerk pay to intervener that sum and costs.  Plaintiff appeals.

Appellant contends, (1) that the evidence was insufficient to show that intervener was the owner of the player and music; (2) that, in any event, intervener failed to show any title to the money on deposit in the bank at the time of the service of the writ of garnishment.

As sustaining the first contention, it is argued that, inasmuch as the player and music were acquired during the marriage relation of intervener and her husband, the property was community property and not her separate property.  Intervener, however, testified that the player and music were gifts from her husband.  There was no evidence to the con-

trary.  It is evident that the husband had permitted inter-
vener to treat this property as her own.  He at least would
be estopped to claim any interest in it.  We are satisfied that
the evidence was sufficient to sustain the court's finding that
the player and music were the separate property of inter-
vener.  Moreover, so far as the record shows, the question
of defect of parties was not raised at the trial.

It is next urged that the intervener had no right to any
part of the insurance money because she paid no part of the
insurance premiums.  But the evidence shows that the insur-
ance was carried upon her instrument for her benefit and
that the loss was adjusted and paid with that understanding.
The fact that she did not know until after the loss that the
property was insured and that she did not pay any part of
the premiums is wholly immaterial to appellant's rights in
the premises.

Appellant's main contention is that, inasmuch as the
money paid on account of the loss of intervener's ·property
was commingled with moneys belonging to the music house
and deposited in its checking account, the burden was upon
intervener to show, in order to a recovery of the full amount,
that the blended account had never fallen during its currency
below the amount paid on account of her loss.  It is not dis-
puted that, as a matter of law, the $525 was a trust fund
held by the music house for intervener and commingled with
its own funds.  The right of a beneficiary to reclaim a trust
fund is based upon his right of property, not upon any right
as a preferred creditor of the trustee.  Hence, it was for-
merly held that the blending of trust money with that of the
trustee defeated the owner's title and reduced his status to
that of an unsecured creditor of the trustee.  This on the
theory that, having lost its identity, the trust money could
not be followed and recovered *in specie*.  The inequitable re-
sults of this doctrine finally led a great majority of the courts
to adopt the rule that, where money held by one person as
trustee for another has been commingled with money of the

trustee and deposited in a bank to the trustee's individual credit, the balance in the bank may be charged with the trust. This on the reasonable presumption that the trustee intends to use only what he has the right to use, and that whatever the trustee withdraws from the account is from his own part of the common fund and that the balance remaining includes the trust fund. *Board of Com'rs of Crawford County v. Strawn*, 157 Fed. 49, 15 L. R. A. (N. S.) 1100; *Waddell v. Waddell*, 36 Utah 435, 104 Pac. 743; *Widman v. Kellogg*, 22 N. D. 396, 133 N. W. 1020, 39 L. R. A. (N. S.) 563; *Lincoln Savings Bank & S. D. Co. v. Morrison*, 64 Neb. 822, 90 N. W. 905, 57 L. R. A. 885; *Smith v. Fuller*, 86 Ohio St. 57, 99 N. E. 214, Ann. Cas. 1913 D. 387; *Brennan v. Tillinghast*, 201 Fed. 609; *Southern Cotton Oil Co. v. Elliotte*, 218 Fed. 567; *Hewitt v. Hayes*, 205 Mass. 356, 91 N. E. 332, 137 Am. St. 448; *Spokane County v. First Nat. Bank*, 68 Fed. 979.

But as a resulting corollary it is still held that, if at any time during the currency of the blended account the withdrawals leave a balance less than the trust fund, that fund must be regarded as dissipated, except as to such balance. Sums subsequently added to the account from other sources cannot be attributed to the trust fund. *Board of Com'rs of Crawford County v. Strawn, supra; Hewitt v. Hayes, supra.* Some courts have refused to recognize this corollary but they are few, and at least one of these has, in more recent decisions, receded from its former position. *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237, 58 N. W. 383; *In re Plankinton Bank*, 87 Wis. 378, 58 N. W. 784; *Burnham v. Barth*, 89 Wis. 362, 68 N. W. 96. For a full statement of the foregoing principles substantially in the language of the leading cases see 3 R. C. L. § 180. As between other creditors and the *cestui que trust*, the burden of proving his title still rests upon the latter. *Schuyler v. Littlefield*, 232 U. S. 707. Aided by every presumption, he can only recover the lowest balance to which the blended account had been reduced pending its cur-

rency as shown by the bank's books. *Powell v. Missouri &
A. Land & Min. Co.*, 99 Ark. 553, 139 S. W. 299.

Applying these principles to the case before us, it is clear
that the judgment must be reversed. Prior to the last de-
posit of July 1, 1915, of $510.21, there had been deposited
and commingled with money of the music house $408.63 of
intervener's money. The evidence is undisputed that, prior
to this last deposit, the music house had checked against this
account, but there is no evidence as to what checks had been
paid or what was the lowest ebb of the account prior to the
last deposit. The burden was upon intervener to show this,
since no part of the last deposit save $116.37 paid on ac-
count of the loss of her property can be attributed to the
trust fund. Counsel for intervener offered to show the
actual state of the account by the bank's books. The court
held that this was immaterial. This was error. It may be
asserted that the error was invited by counsel for appellant
through his objection to this offer. And this is true, but
it is manifest that the court's ruling was at least calculated
to lead appellant's counsel to believe that the check book of
the music house was the only competent evidence of the state
of the blended account. The error invited by appellant was
not the error committed by the court and carried into its
findings. The court's error went deeper. It consisted in
the evident assumption that the actual state of the blended
account during its currency prior to the last deposit was
immaterial and that the final balance, whatever its source,
was charged, as a matter of law, with the trust to the full
amount of the trust fund. Appellant's error was as to the
character of the evidence competent to establish the condi-
tion of the account during its currency. It would be unfair
to hold appellant estopped to question the judgment for that
reason, since, even had the intervener been permitted to prove
the condition of the account from the bank's books, the
court's findings show that the judgment would have been the
same as that rendered.

Of the moneys in court, intervener is entitled to $116.37, the trust money contained in the last deposit, plus the lowest balance to which the blended account had been reduced subsequent to the first deposit of June 18, and prior to the last deposit of July 1, but in no event the total to exceed the sum of $525 and her costs. Since she was compelled to go into court to recover any part of the trust fund, it is clear that, in addition to whatever she is permitted to recover of that fund, she is entitled as against plaintiff, a mere general creditor, to have her costs paid from the money in court. The case is here for trial *de novo,* but the evidence essential to its proper determination is not before us and was not before the trial court.

The judgment is reversed, and the cause is remanded with direction to take further evidence as to the condition of the blended account at all times between June 18 and July 1, 1915, make an additional finding thereon, and enter judgment for intervener in accordance with this opinion.

Morris, C. J., and Fullerton, J., concur.